IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 26, 2009

## STATE OF TENNESSEE v. THOMAS CHRISTOPHER HAYES, ALIAS CHRISTOPHER HAYES

**Appeal from the Criminal Court for Hamilton County**
**No. 257903     Don W. Poole, Judge**

_____

**No. E2009-00218-CCA-R3-CD - Filed March 15, 2010**

_____

The Defendant, Thomas Christopher Hayes, appeals as of right his Hamilton County Criminal Court jury conviction for sexual battery, a Class E felony. The trial court sentenced the Defendant to four years as a Range II, multiple offender to be served in the Department of Correction. His sole issue on appeal is whether the evidence is sufficient to support his conviction. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P.  3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and CAMILLE R. MCMULLEN, J., joined.

Benjamin L. McGowan (on appeal), Chattanooga, Tennessee; Ardena Garth, District Public Defender; and  Lorrie Miller, Assistant Public Defender (at trial), attorneys for appellant, Thomas Christopher Hayes.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William B. Cox, III, District Attorney General; and Rachel Winfrey, Assistant District Attorney General, attorneys for appellee, State of Tennessee.

### OPINION

The victim, C.S.,[1] testified that she was fourteen years old at the time of the incident. She stated that the Defendant was her mother's ex-boyfriend and the father of her youngest

_____

[1] It is this court's policy to refer to victims of sexual abuse by their initials. The victim testified that her birthdate is October 30, 1991.

sister. The victim testified that the Defendant arrived at the home she shared with her mother, older sister, and three younger sisters sometime in the early morning hours of December 27, 2005. The victim recalled that the Defendant was wearing jogging pants that made noise when he walked so she could hear him walking through her room to get to the kitchen. Regarding the incident, she testified that

> I could hear his pants. So it woke me up, but I still laid there. So I woke and that's when I could hear him walking back and forth. I thought he was gone, but he wasn't, he was still in the room. So that's when he got down on his knees . . . and I could feel his hands moving up my leg, up my shorts and up my underwear to where his finger was touching my vagina and he was rubbing me . . . . at first, I wasn't going to do anything, because I was scared. So then that's when I jumped and I reached for his hand and that's when he grabbed my face and told me to shhh.

The victim stated that the incident lasted "maybe about a minute." She said after she grabbed his hand the Defendant asked her for the blanket off one of the beds and "got up and went in the living room."

After the Defendant left the room, she began to cry. The victim recalled that she never fell back asleep and remembered hearing her mother's alarm clock go off. She testified that the Defendant was asleep on the couch when her mother left for work and that she did not talk to him at all that morning. The victim told her older sister about the incident who encouraged her to tell their mother when she got home from work later that evening. The victim denied ever telling anyone that the Defendant touched her breasts. She testified that she consistently told her sister, her mother, and the investigators that the Defendant touched, but did not penetrate, her vagina. She also testified that she had no motive to lie about the incident.

The victim's mother, Lashondria M. Taylor, testified that C.S. was fourteen years old at the time of the incident involving the Defendant. She stated that the Defendant is the father of the youngest of her five daughters whose ages ranged from four to fifteen when the offense occurred. She testified that the Defendant would just "pop up" occasionally to see his daughter when "he didn't have a place to stay or he was hungry or something like that." On December 27, 2005, the Defendant made such a late-night appearance. Ms. Taylor told him that he could sleep in the recliner in her bedroom. When she awoke to get ready for work at 6:00 the next morning, she found the Defendant asleep on the living room couch.

Ms. Taylor testified that when she got home from work at about 8:00 that evening, her oldest daughter told her that she needed to talk to the victim. Ms. Taylor recalled that C.S.

"was very uncomfortable and scared" when she told her what had happened. Ms. Taylor immediately telephoned the police who took the victim's statement. She testified that the victim did not seek medical treatment or undergo an examination because she was hesitant to talk to anyone outside the family or their church about the incident. Ms. Taylor stated that the victim seems to be "okay" since the offense and that their relationship "had gotten closer." She stated that she had not seen the Defendant since the day of the offense.

Sergeant Rebecca Shelton of the Chattanooga Police Department testified that she interviewed the victim a few days after the report of the incident. She recalled that the investigators initially had some difficulty locating the Defendant but that he was eventually apprehended through the fugitive division of the police department. Sergeant Shelton stated that the Defendant offered no statement regarding the incident. She also testified that the mother's initial report to the police indicated that the Defendant had touched the victim's breasts. However, when she interviewed the victim, she consistently reported that he had touched her vagina.

Based on this evidence, the jury convicted the Defendant of sexual battery. On appeal, the Defendant argues that the victim made inconsistent allegations regarding where she was touched and that this inconsistency renders the evidence insufficient. The State argues that the jury resolved any issues of credibility by their verdict and that the proof is sufficient to support the conviction. Following our review, we agree with the State and affirm the judgment of the trial court.

ANALYSIS

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The appellate court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict. Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a

combination of both direct and circumstantial evidence.  State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

Sexual battery is defined, in relevant part, as "unlawful sexual contact with a victim by the defendant or the defendant by the victim [and] [t]he sexual contact is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the contact that the victim did not consent."  Tenn. Code Ann. § 39-13-505(a)(2).  The proof in this case established that the Defendant touched the victim's vagina while he thought she was asleep.  The victim grabbed his hand to stop him and he told her to be quiet.  The victim testified that she consistently reported that the Defendant touched her vagina.  The only contrary evidence was that the victim's mother reported initially that the Defendant had touched the victim's breasts.  Any inconsistencies in the evidence presented at trial or issues regarding credibility of the witnesses were resolved by the jury as was within their province.  Therefore, we conclude that the evidence is sufficient to support the conviction for sexual battery.

CONCLUSION

Based upon the foregoing, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE